May it please the Court, my name is Carlos Cruz and I represent the petitioner. I'd like to reserve two minutes for rebuttal. Your Honors, the Board of Immigration Appeals in this case erroneously determined that the petitioner failed to establish past persecution or well-founded future persecution on account of her membership in a particular social group and political opinion based on the following three reasons. First, the petitioner's family circumstances were particular and socially visible to the MS gang members in this case. Second, the family's visible efforts to protect their family and interests by taking arms against the gang members espoused a political opinion. And lastly, the Salvadoran government is clearly unable and unwilling to control the gang violence inflicted upon the petitioner in this case. The primary issue in this case, Your Honors, is whether or not the issue of family can be used to provide petitioner, in this case, the protections of our asylum laws. There is some confusion regarding the Supreme Court's decision about whether or not the BIA has found that family constitutes a particular social group. The immigration judge himself is confused about the Court's ruling in that particular decision. The bottom line with the Supreme Court decision is quite simple. It was a procedural decision that the Supreme Court reached in that case. The Court never commented on the substantive issue of whether or not this Court had properly found that family does, in fact, constitute a particular social group. Well, I'd like to go to the first reason given by the BIA. Yes, Your Honor. Which is that your client failed to show that the government would not or could not protect her and her family. As I understand it, she went to the police and the police told her, we can't do anything without evidence. Is there anything illogical about that response? Yes, Your Honor. What's illogical about it? The illogical nature is the other word that the police used to describe the evidence. The police specifically requested physical evidence of the threat that was made against the petitioner in this case. There was absolutely no physical evidence. Well, did she make any effort to provide other evidence, such as ask the uncle who actually heard the threat, go talk to the police? The petitioner testified she never thought of that, and the police themselves. Why would she not have thought of that? Wouldn't that help to make the – I mean, she didn't hear the threat directly, did she? No, she did not, Your Honor. And the police didn't have anything to go on based on her say-so. Your Honor, the reason she didn't think of that is because, according to the petitioner, all the neighbors in that particular community knew of the threat. And what the court – the BIA didn't realize, and the immigration judge overlooked, is that she didn't go to the police department alone. She went with her mother-in-law. And according to the testimony in the record, we told the police everything, implying that both the petitioner and the mother-in-law had told the police about the threat that had been made to rape the petitioner. Well, had the mother-in-law heard the threat directly? There's no indication in the record that says that, Your Honor. What the record says – And it was the uncle that heard the threat.  And did your client take the uncle in or tell the uncle to go talk to the police? No, Your Honor. That is in the record that the uncle was never taken to the police, nor did he provide that statement. The husband attempts to explain why a witness will not come forward, stating that they're afraid, that although they may be able to and willing to share the threat to protect an individual, they are unwilling to come forward to the police because of the fear that they face at the hands of the MS gang. But, Your Honor, the request for the police to produce physical evidence – and I think the court should really look at that request – clearly implies and it shows that it was just a way to get rid of the petitioner. They wanted to see a body. But it's not quite that simple, is it? I mean, there's a concern here because your client's brother-in-law was murdered. But, in fact, the police took action there, didn't they? They did take action in that case. There was a body and the police took action and eventually did prosecute and convict the individual that had murdered the brother-in-law, who was later murdered in prison himself. Isn't that inconsistent with the notion that the police don't care and won't do anything? Your Honor, the police, based on the record and based on the information in this case and every other case where there is a death at the hands of the MS gang, the police do seem to take action and investigate and prosecute those cases. But I'd like to reference the court to a recent decision in Enrique Rivas v. Holder, where this court found that even though the petitioner's father had been murdered and even though the MS gang members had been prosecuted, had been convicted to 25 years and 7 years, that even after that prosecution, even after that conviction, that the government was still unable to control the MS gang members from inflicting additional harm on the petitioner in that case. This court already found in that case that the MS gang member is incapable of being controlled by the Salvadoran government. And I would ask this court to follow that court's decision in determining that the government in El Salvador, that the police in El Salvador, is either unable, as found by the Enrique Rivas case, or unwilling to enforce its laws and protect the citizens. We're usually in the business of making factual findings, so could you point me to specifically what you're talking about? Yes, Your Honor. With regards to the Enrique Rivas case, it's quite simple. There, the petitioner... But what in the opinion leads you to the conclusion that this court has made a factual finding? The reason I say that, Your Honor, is because the only way... What in the opinion? Can you point me to a page? Can you point me to a paragraph? Yes, Your Honor. The petition for review is granted and the case is remanded. I will cite the court to the very last statement. The only way that the court could reverse the BIA would be to find, in addition to past persecution, that the government was unable or unwilling to control the persecution being inflicted by the MS gang as one of the elements to satisfying the task for political asylum, and certainly for an order from this court reversing and remanding the BIA. I'm not finding in your statement something that supports the proposition that you offered us. Unless you point me to something more specific than this, I will take that proposition as being not founded on our opinion. Your Honor, I do not have the actual decision before me, but I can, again, one of the elements to reversing a case by the BIA is to find that the government is unable or unwilling to protect the individual from the persecutor in that case. In that case, in Enrique Rivas' case, it did reverse and did fine for the petitioner. The issue in this case, Your Honor, in addition to whether or not the police is able... The BIA discussed that issue. I do not recall if the BIA discussed that issue. I didn't have access to that. It may be that the ultimate conclusion is dependent upon the implicit finding, but we only pass on the reasons given by the agency. If the agency doesn't talk about it, our opinion has no statement for it one way or the other. And I understand that, Your Honor. And what I can tell you is with regards to the request for the police, if the police had requested a witness to come forward and the petitioner had failed to provide that witness, certainly the board would be justified and the judge would have been justified in making that conclusion. All the police needed to do in this case was go into this community, into this neighborhood, and question any of the neighbors, any of those potential witnesses, not just the uncle who was just a neighbor in that community. Any witness would have been able to affirm or provide that statement, absent fear on their part, of some reprisal on the part of the MS gang. The police didn't do that. Instead, they requested physical evidence from the petitioner and the mother-in-law who accompanied the petitioner to report the crime. There was no physical evidence. That request simply reveals an unwillingness on the part of the police to investigate, arrest, prosecute, charge, convict these individuals responsible for this particular incident. Your Honor, with regards to the issue of family, in this case, the petitioner was persecuted on account of her family. Her sister-in-law was raped. Her brother-in-law was murdered. Her husband was threatened. Her husband was perceived to have been responsible for the murder of a gang leader. She herself was threatened with death in the rape of her child, consistent with the actions that had been taken against this family for a period of time extending over a decade. There was persecution against this individual, against Mrs. Urrutia, for her membership in this particular social group, and I would ask this Court to reverse the VA's decision. Thank you, Your Honor. Thank you. We'll hear from the government. May it please the Court. Samuel Goh on behalf of the United States Attorney General. Your Honors, the record does not compel reversal of the agency's decision. Substantial evidence supports the Board's determination that the petitioner did not establish her alleged membership in the particular social group of her husband's family was one central reason for the gang members' threats against her. There's no evidence in the record showing Why else would she have been threatened? I mean, are you saying that it wasn't because she was a member of the family? Yes. Why else would she have been threatened? The reason that she was threatened was that this was a gang that committed various robberies against the entire local community. And, in fact, we have her husband's testimony saying that, you know, this was based, that the gangs targeted the whole community, that there wasn't any, that the animosity towards him was towards him only and not towards members of his family. And just simply, he said this in his testimony, that the gang members' motivation to harm him is that they wanted to steal his cattle. Additionally, Mr. Ruscha, petitioner's husband, his mother and sister remained unharmed in El Salvador. And, additionally, petitioner's husband also testified that his family members were never physically harmed or directly recently threatened by the gang members and testified that no gang members asked about either his wife or daughter upon their arrival in the U.S. Substantial evidence also supports the board's determination denying asylum because she did not express any anti-gang political opinions. There's no evidence that she expressed any political opinion regarding the gang's activities and did not show the gang imputed such political opinion to her. And, finally, she also did not establish that the El Salvador government was unwilling and unable to protect her from threats against gang members. Did she have to establish that if her family is opposed to the gangs and has been threatened or harmed? Your Honor, she does need to establish that the government was unwilling and unable to protect her from threats against gang members. If I understand your question correctly — No, no. You were arguing that she hadn't been threatened or harmed by the gangs. Yes. And I — my question was, does she have to show that if she can show that her — that her family members were harmed and threatened and that she was — and that she was in danger because of her family association? Your Honor, what — That was her position. Your Honor, what she needs to show is that the gang is specifically targeting her family as a particular social group. Now, the fact that family members, for example, his — her brother — his brother, her husband's brother, was murdered, that was on the basis that he was actually protecting his cattle from the gang members. The gang members wanted to rob him of his cattle. And so that was the reason — or, you know, the record shows that that was the reason for the incident occurring, not because they were specifically targeting her family. Your Honor, on that point, as I said, the robberies that did occur at the family home were based on economic motives, and it's said a lot that these criminal activities do not form a basis for asylum, the controlling case being Zatino v. Holder, 622F3D1007. They didn't single out the family as a discrete family group. Well, I think it was — may have been lost in the cast of characters. Do I call it correctly that she testified, and we accept her testimony as credible, that she was told by her uncle of a threat that had been received, that Petitioner's husband was believed by the gang to have killed a gang member, and as a result they were going to rape or kill or do some untoward act on Petitioner and Petitioner's daughter? Was there testimony to that effect? I believe there was testimony to that effect, but what we are — If that testimony is credible, why wouldn't that amount to — if we accept for the moment family as a particular social group, why wouldn't that amount to something — a well-founded fear of persecution based upon being a member of this family? Because the reason for those threats is that they are made against her husband. It was specifically against her husband, and her husband actually testified to that. That's the family. I mean, if she's being threatened with being killed or raped because they think her husband was responsible for killing a gang member, isn't that a threat directed — She didn't kill the gang member. She isn't thought to have killed the gang member. She's being targeted because she's married to the person who has been fingered. Well, that's a family relationship. Why isn't that on account of being a member of that family or her husband's family? Your Honor, I think what the record shows is that you also have some members of the family that are not being targeted, and that cuts against — It comes to a different question. Yes. We don't — the V.I.A. hasn't relied upon a conclusion that she testified not credibly. It may be that the threat isn't as severe. It may have been an empty threat, but persecution only requires a 10 percent possibility. I hear a threat that my brother's killed somebody or my wife has killed somebody, and they're coming after me as a result. Years later, it turns out nobody else has been killed. But if I go back to that original threat, why isn't that a threat to me based upon my family relationship? Your Honor, I think you take that testimony along with the husband's testimony, which was also found to be credible, stating that the gang's problem was with him. When on direct testimony, is it — But the uncle apparently heard a threat saying specifically not just him, but the wife and daughter were being threatened. Now, the husband may have thought, I'm the one that's really between the crosshairs, but according to Petitioner, the uncle told her that the gang was threatening her, not just the husband, but the wife, because of the husband's responsibility for killing the gang member. If we accept that as credible, is there any other reason to believe she was being targeted other than the family relationship? I mean, Your Honor, she was targeted because her husband protected his family. Well, that's a family relationship. Now, it may be that the family is at risk for reasons other than the husband's involvement or belief to have been involved in killing the gang member. It may be general crime, as you say. But on that particular point, I don't see how the evidence would point to any — if we accept her testimony as credible, I don't know how the evidence results in any other conclusion that she's at risk because of the family relationship. Well, Your Honor, I would say that the whole community is at risk, and — Well, but the call to the — or however it was communicated to the uncle, I forget. But the testimony she gave about the uncle specifically tied her risk and her daughter's risk to her husband's involvement in killing the gang member. Your Honor, I believe what we have here is that, yes, they were at risk, but so was everyone in the community. And it's all because this gang is in the business of committing robberies against the whole entire community. Everyone is at risk. If you resist what they're trying to do, which is to, you know, to commit crimes and to rob, then you are at risk of being placed in harm's way. So I would say that she has not — the record doesn't show that the agency's decision was not supported by substantial evidence based on the fact that we have direct testimony from the petitioner's husband that they were targeting the entire community. And they were targeting him because he was someone that resisted their actions. Your Honor, with regards to the element that the government was unwilling and unable to protect her from threats against gang members, you know, strikingly, she did not — she only went to the police station once. She did not follow up with anything in terms of, you know, trying to see what evidence or what else she could do to have the police investigate the matter. And as you heard from earlier, petitioner's husband actually testified that the police investigated his brother's murder, captured the gang member, and sent him to prison. Along with that, the evidence in the record shows that there's a 2007 country report that shows how the El Salvador government employed 785 military personnel as an anti-gang task force. And the record also does show that she didn't think to ask her uncle in the first place. So the fact of, you know, whether he was reluctant to be a witness is irrelevant because she did not even approach that issue. It's speculative. Finally, Your Honor, as I referred to earlier, she did not establish that she expressed any anti-gang political opinion. There's no evidence in the record that she expressed any political opinion that was, you know, published regarding the gang's activities or that the gang imputed such political opinion to her. And so for all these reasons, Your Honor, the government respectfully requests that the petition for review be denied based on the fact that substantial evidence supports determination. Thank you. Thank you. Rebuttal. Your Honor, the petitioner in this case was, in fact, threatened. The government's argument that there was no threat to petitioner is simply belied by the record. There's ample evidence in this record, which the Court did find credible, that clearly shows that she was threatened because of her relationship to her husband. That is an undisputed fact in this record. And I will submit to the Court on that point. The reason why the family was persecuted is a completely different question. The petitioner's husband in this case could make the claim, like in the Cordova case, that he was persecuted because he owned cattle and make an analysis to owning land. But that is not before the Court. Well, if we grant you all of that, does it make any difference if she has failed to show that the police couldn't control this violence? No, Your Honor. The Court will have to find that the police was unable or unwilling to control. And so the issue in this case becomes, was it reasonable for the police to impose a requirement of physical evidence on this petitioner without any training whatsoever regarding the way in which the police investigate these matters? There was another woman present, her mother-in-law, when she made the report. Every neighbor in the community knew about the threat. She clearly conveyed that to the police. The police simply needed to come out to that particular neighborhood and question neighbors, not even the uncle, to determine whether or not the threat had been made against the petitioner in this case. The police didn't do that, Your Honor. Does that mean that they couldn't control the threats, or does that mean that they didn't do all that they could in this case? To that issue, yes, Your Honor. It goes to the issue of willingness, whether or not they were willing. But with regards to the country reports and counsel's sites of the country reports, the 2007 country reports provide that there's widespread violence in El Salvador, including gang violence, and that they are committing crimes even from their own prison with the acquiescence of public officials. So there's information in the country report as well that supports the conclusion that the government has been unable to control the extreme violence being inflicted by MS gang members on individuals like the petitioner in this case. And for those reasons, Your Honor, I would ask this Court to reverse the Board's decision. Thank you. Thank you. We thank both counsel for your arguments. The case just argued is submitted. The next case on this morning's calendar for argument is Morgan v. County of Los Angeles. Good morning. May it please the Court, I'm Elizabeth O'Brien.
judges: Schroeder, Noonan, Clifton